Hillsborough
No. 82-285

### THE STATE OF NEW HAMPSHIRE

v.

### GEORGE BERTRAND

August 31, 1983

720

722

*Gregory H. Smith,* attorney general (*Gregory W. Swope,* attorney, on the brief and orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

DOUGLAS, J. The defendant appeals his conviction in Superior Court (*Goode,* J.) of arson, RSA 634:1, I and II. He challenges his conviction on a number of grounds, including the argument that he

was denied due process and a fair trial when the trial judge failed, on his own initiative, to hold an evidentiary hearing during the trial on the defendant's competency. We reverse and remand.

On the morning of June 27, 1981, a fire broke out in the apartment of the defendant, George Bertrand, on the fourth floor of an old wooden apartment building on Pine Street in Manchester. More than half the residents of the apartment building were elderly. A tenant ran into the building manager's office to summon help to extinguish the fire. Maurice Bourgeois, the owner of the building, ran upstairs, broke into the defendant's apartment with a fire extinguisher, and put out the fire, but not before it destroyed the mattress and damaged the bed frame, walls, and floor of the apartment near the bed. When Bourgeois asked the defendant how the fire had started, the defendant said that he had started the fire because he had wanted to kill himself.

The defendant then went to the Manchester police station where he told Officer Paul Soucy, "I set my apartment on fire and I set my bed on fire with me in it." The defendant told Officer Soucy that he wanted to die and asked Soucy to kill him. After it was corroborated that a fire had occurred in the defendant's apartment, the defendant was arrested and charged with arson.

Prior to trial, the court ordered the defendant to undergo psychiatric evaluation, pursuant to defense counsel's request, in order to determine whether he was sane at the time of the fire and whether he was competent to stand trial. In a report dated December 11, 1981, Dr. Henry E. Payson, a psychiatrist and consultant to the New Hampshire Hospital, indicated that the defendant had a long history of mental illness, including twelve previous admissions to the State hospital. Dr. Payson stated that the defendant's medical records showed a variety of mental disorders characterized by periods of depression and delusions of having caused numerous important events, including the bombing of Pearl Harbor and "tragedies occurring to persons on television." Significantly, Dr. Payson also noted that the defendant "has frequently confessed to crimes known not to have taken place." According to this report, the purpose of these false claims was to draw attention to himself.

Based on his evaluation of the defendant, it was Dr. Payson's opinion that the defendant's "statement to the Manchester Police about his deliberate intent to set the fire is not reliable. Without additional evidence of an intentional act, only this unreliable statement appears to distinguish the act from that of an accidental fire setting." In conclusion, Dr. Payson stated that there was insufficient information to determine whether the defendant was insane at the time of the fire, but that he appeared to be competent to stand trial.

In a much more abbreviated report dated March 10, 1982, Dr. Ralph Luce, who is also a psychiatrist, stated that there was no evidence that the defendant was insane at the time of the fire. Dr. Luce also was of the opinion that the defendant could cooperate with his attorney and aid in his own defense, and that he was therefore competent to stand trial.

The defendant was tried on the arson charge in May 1982. There is no evidence in the record that an evidentiary hearing was ever held on his competency to stand trial. At trial, the defendant initially testified that on the morning of the fire he had lain on his bed to smoke a cigarette and had fallen asleep. When he awoke, the room was filled with smoke. This testimony was consistent with what he had told the two psychiatrists during the psychiatric evaluations. Upon questioning by defense counsel, however, the defendant stated that he had "set" the fire.

Defense counsel immediately requested the trial judge to order another psychiatric evaluation of the defendant because "I'm of the opinion that he wants to be found guilty and he's just going along with the testimony he's heard this morning." The trial judge denied the motion, but with defense counsel's acquiescence instructed the jury to treat the defendant's admission as a "confession" which must be supported by substantial independent corroborating evidence to show its trustworthiness. *See State v. Zysk*, 123 N.H. 481, 487, 465 A.2d 480, 483 (1983); *State v. George*, 109 N.H. 531, 533, 257 A.2d 19, 20–21 (1969).

In an effort to explain the defendant's in-court admission and out-of-court admissions to Officer Soucy and the apartment building owner, the defense called to the stand Dr. Payson, who repeated much of the substance of his psychiatric evaluation report on the defendant, particularly the defendant's pattern of confessing to crimes he did not commit. On cross-examination, however, he conceded that the reliability of any confession by the defendant would depend upon whether the related circumstances and his conduct at the time corroborated the confession.

The jury found the defendant guilty of arson, a class A felony. After expressing "concern" about the defendant's mental state, the trial judge sentenced him to seven-and-one-half to fifteen years in the State prison, but requested the prison warden to transfer the defendant to an appropriate mental health facility. The defendant then took this appeal.

 Both the United States Supreme Court and this court have recognized that a criminal defendant has a constitutional right not to be tried if he is legally incompetent. *Pate v. Robinson*, 383 U.S.

375, 378 (1966); *State v. Hayes*, 118 N.H. 458, 462–63, 389 A.2d 1379, 1382 (1978). The defendant enjoys this fundamental substantive guarantee not to be tried if he is unable to "consult with his lawyer with a reasonable degree of rational understanding" or he does not have "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); *State v. Stiles*, 123 N.H. 680, 684, 465 A.2d 908, 911 (1983); *see Roy v. Perrin*, 122 N.H. 88, 94, 441 A.2d 1151, 1155 (1982). "To protect this guarantee a defendant also enjoys the procedural advantage that if sufficient doubt exists of his competency to stand trial the trial court must *sua sponte* inquire into his competency." *Acosta v. Turner*, 666 F.2d 949, 954 (5th Cir. Unit B 1982) (citing *Pate v. Robinson*, 383 U.S. 375, 385 (1966)). A court's failure under such circumstances to inquire as to the defendant's competency deprives him "of his constitutional right to a fair trial." *Id.* at 385.

■ *Pate* spoke in terms of a *"bona fide* doubt" of a defendant's competency to stand trial, *id.* (italics in original). We hereby adopt the following standard under part one, article fifteen of the New Hampshire Constitution: Due process requires that a trial judge, on his own initiative, order an evidentiary hearing whenever a bona fide or legitimate doubt arises whether a criminal defendant is competent to stand trial.

■■ In *Drope v. Missouri*, 420 U.S. 162 (1975), the Supreme Court, discussing the significance of *Pate*, stated that the criteria which a trial court should consider in determining whether a competency hearing is required include "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competency to stand trial . . . ." *Id.* at 180. Once a bona fide doubt arises whether the defendant is competent to stand trial, *Pate* requires that an evidentiary hearing be held to determine the competency issue. Such a hearing, with the opportunity to introduce evidence, cross-examine witnesses, and have specific factual findings made on the record which may be reviewed on appeal, obviously comports with traditional notions of due process mandated by our State Constitution. *See Pate v. Smith*, 637 F.2d 1068, 1072 (6th Cir. 1981); *cf. Stapleford v. Perrin*, 122 N.H. 1083, 1088, 453 A.2d 1304, 1307 (1982) (defining due process rights in cases of delayed incarceration).

■ Applying the foregoing principles to the instant case, we hold that the defendant was denied his rights to due process and a fair trial because of the trial judge's failure *sua sponte* to hold an evidentiary hearing on the defendant's competency to stand trial after the

defendant's unexpected admission on the witness stand. Dr. Payson's psychiatric evaluation report on the defendant indicated that he had had a long history of mental illness involving twelve prior admissions to the State hospital. *See Pate v. Smith*, 637 F.2d at 1070. The out-of-court admissions by the defendant that he intentionally set the fire fit the description of the type of behavior which Dr. Payson explained the defendant engaged in for the purpose of gaining attention.

■ Even though both psychiatrists were of the opinion that the defendant was competent to stand trial, such expert opinions were merely evidence of competency. Because the trial court did not order a competency hearing, the defendant was denied the opportunity to challenge the basis for those opinions. Furthermore, the absence of a record containing specific findings precludes us from adequately reviewing the basis for the trial judge's implicit acceptance of the fact that the defendant was competent to stand trial. *See id.* at 1072; *Tillery v. Eyman*, 492 F.2d 1056, 1059 (9th Cir. 1974).

■ Competency to stand trial, no less than dangerousness under our criminal-commitment statute, RSA 651:11-a (Supp. 1982), is a legal, and not a medical, concept. *State v. Paradis*, 123 N.H. 68, 71, 455 A.2d 1070, 1073 (1983); *see State v. Stiles*, 123 N.H. at 684, 465 A.2d at 911 (defining proper legal standard for determining competency). Trial judges must not be permitted to abdicate to psychiatrists their judicial responsibility to determine whether a criminal defendant is competent to stand trial. *See State v. Hesse*, 117 N.H. 329, 332, 373 A.2d 345, 347 (1977).

■■ "Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Drope v. Missouri*, 420 U.S. at 181. While the State has attempted to distinguish the cases cited by the defendant for this proposition, arguing that in those cases the defendants' conduct at trial was more egregious, we believe that the abrupt change in the defendant's testimony at trial in this case, in light of his medical history, should have raised a bona fide doubt in the trial judge's mind of the defendant's competency to stand trial. Even though defense counsel requested only a new psychiatric evaluation and acquiesced in the trial court's instruction on the corroboration requirement in lieu of such an evaluation, the trial judge had sufficient information at that time so that it was incumbent upon *him* to order an evidentiary hearing on the defendant's competency.

During the defendant's sentencing hearing, the trial judge himself expressed "concern" about the defendant's mental state, and requested the prison warden to seek appropriate psychiatric care for the defendant. The trial judge's statement is indicative of his doubt about the competency of the defendant. Providing treatment *after* trial does not relieve the trial court of its constitutional responsibility of holding a competency hearing *before* or *during* trial.

Having concluded that the trial court erred in not holding a competency hearing, we must consider what relief is appropriate in this case. We note that only one year has passed since the defendant's trial. In similar circumstances, some courts have remanded the case for a determination "whether an adequate and meaningful *nunc pro tunc* inquiry can be made into the question of whether [the defendant] was incompetent at any time during the trial and pre-trial proceedings." *Acosta v. Turner*, 666 F.2d at 956. We believe that the defendant in this case should receive a new trial, however. Otherwise, he would run the risk of an erroneous retrospective determination of competency in the absence of a record of a hearing on the competency issue at the time of his trial. *But cf. State v. Stiles*, 123 N.H. at 685, 465 A.2d at 911 (case remanded for retrospective determination of competency in light of fact that record existed of competency hearing at time of trial).

Accordingly, we reverse the defendant's conviction and remand the case for a new trial. The defendant shall be entitled to an evidentiary hearing in conformity with this opinion, at which hearing the State shall have the burden of proving that the defendant is competent to stand trial. *United States ex rel. Bilyew v. Franzen*, 686 F.2d 1238, 1244 (7th Cir. 1982); *Brown v. Warden, Great Meadow Correctional Facility*, 682 F.2d 348, 349 (2d Cir.), *cert. denied*, 103 S. Ct. 349 (1982); *United States v. DiGilio*, 538 F.2d 972, 987–88 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038 (1977). *But cf. Lokos v. Capps*, 625 F.2d at 1262 (defendant bears burden of proof of incompetency at trial in collateral attack by habeas corpus petition); *Roy v. Perrin*, 122 N.H. at 94, 441 A.2d at 1155 (same regarding competency to plead guilty). The standard of proof shall be a preponderance of the evidence. *Brown v. Warden, Great Meadow Correctional Facility*, 682 F.2d at 353-54; *United States v. DiGilio*, 538 F.2d at 988. If the defendant is found to be competent, then a new trial may proceed.

It should be noted that we perceive no inconsistency in placing upon the State the burden of proof that the defendant is competent at the time of trial and placing upon the defendant the burden

of proof that he was insane at the time of the offense. *See Novosel v. Helgemoe*, 118 N.H. 115, 125–27, 384 A.2d 124, 130–31 (1978). The United States Supreme Court has declined to construe the Federal Constitution as requiring the State to prove a criminal defendant's sanity, *Patterson v. New York*, 432 U.S. 197, 210 (1977); *Leland v. Oregon*, 343 U.S. 790, 797–99 (1952), whereas federal due process mandates that a defendant not be tried for an offense while he is mentally incompetent. *Pate v. Robinson*, 383 U.S. at 378 (citing *Bishop v. United States*, 350 U.S. 961, 961 (1956) (per curiam)).

Similarly, this court has interpreted part one, article fifteen of our State Constitution as posing no obstacle to placing the burden on a defendant to prove his insanity. *Novosel v. Helgemoe*, 118 N.H. at 127, 384 A.2d at 131. Our criminal due process provision, however, requires that a defendant not be subject to criminal prosecution if he is not competent. *State v. Hayes*, 118 N.H. at 462–63, 389 A.2d at 1382. We believe that a necessary ingredient of that constitutional mandate is that the burden rest upon the State to prove the defendant's *competency* to stand trial. Nothing in this opinion should be read as deviating from our holding in *Novosel v. Helgemoe* placing upon the defendant the burden of proving the affirmative defense of *insanity* by a preponderance of the evidence.

The circumstances of this case convince us that a prophylactic procedure is necessary whenever a defendant's competency to stand trial is put into question by virtue of a court order that he be given a psychiatric evaluation to determine competency.

Therefore, in the future whenever a trial court orders a criminal defendant to undergo psychiatric evaluation to determine such competency, such an order shall be deemed to reflect the existence of a bona fide doubt as to the defendant's competency. *See Tillery v. Eyman*, 492 F.2d at 1060 (Sweigert, J., concurring); *Brizendine v. Swenson*, 302 F. Supp. 1011, 1019 (W.D. Mo. 1969). Consequently, in such cases an evidentiary hearing must follow at which the defendant shall be entitled to present evidence and cross-examine witnesses. The trial court must make specific findings of fact on the record, and must state the evidence on which it bases its decision. These post-evaluation procedures thus will complement the specific pre-evaluation procedures required by this court in *Novosel v. Helgemoe*, 118 N.H. at 121–22, 384 A.2d at 128; *see* N.H. SUPER. CT. R. 102.

In cases where the court does not order a pretrial psychiatric evaluation, the due process principles articulated in this opinion may nonetheless impose a duty upon the trial judge to order an evi-

dentiary hearing if a bona fide doubt arises later as to whether the defendant is competent to stand trial.

Because of our disposition of this case, we need not address the other issues raised by the defendant.

*Reversed and remanded.*

All concurred.