STATE of South Dakota, Plaintiff
and Appellee,

v.

Tracey JONES, Defendant
and Appellant.

No. 15243.

Supreme Court of South Dakota.

Considered on Briefs Oct. 23, 1986.

Decided May 27, 1987.

Clair B. Ledbetter, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Cynthia A. Howard, Northern Hills Public Defender's Office, Deadwood, for defendant and appellant.

FOSHEIM, Retired Justice.

A Butte County Grand Jury indicted Tracey Jones (Jones) on Count I, third-degree burglary; Count II, grand theft; Count III, aggravated assault; and Count IV, commission of a felony while armed with other than a machine gun or short shotgun. Jones appeals the petit jury conviction on

all four counts. We reverse on the grounds the trial court's application of SDCL 23A–10A–6.1 deprived Jones of his due process rights and a fair trial.

At approximately 1:00 a.m. on March 25, 1985, Jones broke into a sporting goods store in Belle Fourche, South Dakota, where he stole a handgun. The Belle Fourche Police Department quickly identified Jones as a suspect. Knowing that Jones sometimes lived in a leanto near the Belle Fourche River, a Belle Fourche police officer walked along the river's bank looking for the suspect. He found Jones napping next to his leanto. Upon noticing the policeman, Jones jumped up, pointed the stolen gun at the officer, and fled. He was apprehended two days later.

After his arrest, Jones was examined by two psychiatrists and a psychologist. The reports indicated he suffered various mental problems. Most notable was the delusion he had a highly contagious incurable skin disease. Jones avoided contact with other persons for fear they would catch his imagined affliction. He therefore blamed the "disease" for preventing him from holding a job, marrying, and having sexual relations. His despair over this isolation apparently prompted Jones to steal the gun, in order to have a means of killing himself.

After the psychological examinations were completed Jones' counsel moved for, and was granted, a hearing to determine his client's competency to stand trial. A jury impaneled to determine triability found Jones competent to proceed.

At his arraignment, Jones attempted to plead no contest to all four charges, against the advice of his counsel. The court refused to accept this plea because the psychologist's and psychiatrists' reports demonstrated Jones possessed, in the court's words, "some rather bizarre thought patterns." The court continued the arraignment hearing to give Jones time to reconsider his pleas. At the ensuing arraignment, Jones apparently wished to enter no-contest pleas to the first two charges and not guilty pleas to the third and fourth charges. Defense counsel requested that the court reject his client's desires and enter not guilty and not guilty by reason of insanity pleas on all four counts. The court granted this request.

After the competency hearing and arraignments, a bifurcated trial was held in which separate proceedings were conducted to determine guilt and sanity at the time of the offense. Jones was found "guilty" on all four counts in the guilt/innocence phase, and "guilty and sane" on all four counts in the sanity phase held the following day. The jury was instructed to place the burden of proving sanity upon the state. Jones was sentenced to four years in the penitentiary on each of the first three counts, and to one year on the fourth count. The four-year sentences were to be served concurrently, and the one-year sentence consecutively.

Two issues are urged on appeal. First, whether there was sufficient evidence to support the jury's finding that Jones was sane and not mentally ill at the time he committed the alleged acts; and second, whether he can be convicted and sentenced on the offenses of aggravated assault with a deadly weapon and commission of a felony while armed with other than a machine gun or short shotgun for acts which took place during the same incident.

Before advancing to the issues raised, we feel obliged to examine a troublesome element imbedded in this case. Under SDCL 23A–10A–6.1 "[t]he party asserting that a defendant is mentally incompetent to proceed has the burden of proving it by a preponderance of the evidence." Since the competency hearing was held on Jones' motion, the jury hearing the fitness to proceed issue was instructed that the defendant had the burden of proving his own incompetency.[1] Although Jones does not challenge the constitutionality of that burden of proof allocation, we regard it to be of

---

1. The instruction read, in pertinent part:

   In this proceeding, the defendant has the burden of proving by a preponderance of the evidence that the defendant is presently incompetent to proceed in the sense that he is incompetent to stand trial....

such importance as to warrant our consideration *sua sponte.*

The legislature has given this court discretion to inquire into "[p]lain errors or defects affecting substantial rights . . . although they were not brought to the attention of a court." SDCL 23A–44–15. *See also* SDCL 19–9–6.[2] This rule was adopted from Federal Rule of Criminal Procedure 52(b) and does not significantly deviate from the language of its federal counterpart. A *sua sponte* application of the plain error rule, however, is not the usual manner in which the statute is invoked. Ordinarily, plain error is urged on appeal by counsel who discovers what appears to have been a substantial error committed below, but to which no objection was made. 3A C. Wright, Federal Practice and Procedure (Criminal) § 856 (2d ed. 1982). Application of the rule is not so limited however, and under Rule 52(b) an appellate court may take notice of an error on its own counsel. *United States v. Adams,* 634 F.2d 830 (5th Cir.1981); *United States v. Brown,* 508 F.2d 427 (8th Cir.1974), *overruled on other grounds, United States v. Flum,* 518 F.2d 39 (8th Cir.1975); C. Wright, *supra. See also Silber v. United States,* 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962); *United States v. Atkinson,* 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936). Additionally, this court has held it may decide a constitutional question *sua sponte. State v. Bonrud,* 393 N.W.2d 785 (S.D.1986); *Bayer v. Johnson,* 349 N.W.2d 447 (S.D.1984).

■ We believe the constitutional issue raised by the enactment of SDCL 23A–10A–6.1, and the instruction of the court premised thereon, presents a special scenario involving the deprivation of a substantial right adequate to justify invoking the plain error and *Bayer* rules. Furthermore, our failure to address the issue presently would likely but defer its reappearance via habeas corpus proceedings under SDCL ch. 21–27. *See Tibbetts v. State,* 336 N.W.2d 658 (S.D.1983) (deprivation of constitutional rights may constitute grounds for habeas corpus relief).

The United States Supreme Court has not decided whether placing the burden upon the accused to prove his incompetency to stand trial violates his due process rights under the United States Constitution. The High Court has, however, recognized that

> [i]t has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial.

*Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103, 112–13 (1975). In *Drope,* the Court observed this "prohibition is fundamental to an adversary system of justice." 420 U.S. at 172, 95 S.Ct. at 904, 43 L.Ed.2d at 113. The Court has also recognized that failure to observe procedures designed to protect a defendant's rights not to stand trial when incompetent is a deprivation of his due process right to a fair trial. *Drope,* (citing *Tate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)).

While the Supreme Court has recognized the sanctity of a defendant's right not to stand trial while incompetent, some jurists and scholars read the Court's decision in *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), to infer that it is permissible under our federal constitution for a state to place the burden of proving incompetency upon the defendant. *Leland* held it was permissible for a state to place the burden of proving *insanity* upon the defendant. Much of the rationale of the holding was that the United States Constitution requires that the government prove beyond a reasonable doubt only those facts encompassing the elements of the crime charged. The Court held that because sanity was not an element of the crime charged, it consequently was constitutionally permissible to place the burden of

**2.** SDCL 19–9–6 provides:
Nothing in §§ 19–9–3 to 19–9–5, inclusive, precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.

proof on that issue upon the defendant. *See also Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (Rehnquist, J., concurring). The High Court recently expressly affirmed *Leland* in *Martin v. Ohio*, — U.S. —, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987).

Incompetency to stand trial and incapacity to commit a crime because of insanity are, of course, distinct and separate issues. Nevertheless, since competency to stand trial is no more an element of a crime than is sanity, the evidentiary allocation applied by the trial court in this case arguably passes United States constitutional muster according to *Leland*. Some federal courts have nonetheless declined to apply the *Leland* rationale to incompetency proceedings, reasoning that placing the burden of proving incompetency upon the accused violates his due process rights under the United States Constitution. *Phillips v. Lane*, 787 F.2d 208 (7th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986); *United States ex rel. Bilyew v. Franzen*, 686 F.2d 1238 (7th Cir. 1982); *Brown v. Warden, Great Meadow Correctional Facility*, 682 F.2d 348 (2d Cir.1982), *cert. denied*, 459 U.S. 991, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982); *United States v. Hollis*, 569 F.2d 199 (3d Cir.1977); *United States v. DiGilio*, 538 F.2d 972 (3d Cir.1976), *cert. denied sub nom., Lupo v. United States*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977). At least one state court has also so held. *People v. McCullum*, 66 Ill.2d 306, 5 Ill.Dec. 836, 362 N.E.2d 307 (1977). *See also Diaz v. State*, 508 A.2d 861 (Del.1986); *Com. v. Crowley*, 393 Mass. 393, 471 N.E.2d 353 (1984); *State v. Bertrand*, 123 N.H. 719, 465 A.2d 912 (1983) (interpreting New Hampshire Constitution); *State v. Heger*, 326 N.W.2d 855 (N.D.1982).

The Third Circuit Court of Appeals expressed the reasoning of these cases as premised

primarily on two principles: first, in order for a criminal proceeding to be fair, our system requires that a defendant be competent; and second, it would be both basically unfair as well as contradictory to say that a defendant who claims he is incompetent should be presumed to have the mental capacity to show that he in fact is incompetent. It simply cannot be assumed ... that a defendant who may be incompetent possesses 'sufficient intelligence that he will be able to adduce evidence of his incompetency which might otherwise be within his grasp.' Since there is an inconsistency in a position which expects the defendant to prove his own incompetency, and because the right not to stand trial if one is incompetent is of due process dimensions ... 'there is no room for a rule of law placing any burden of proof on the defendant' regarding the issue of his incompetency.

*Hollis*, 569 F.2d at 205 (quoting *DiGilio*) (citations omitted).

We are impressed by this reasoning. Nevertheless, we choose not to speculate if the United States Supreme Court will at some future time determine whether, or to what extent, requiring the defendant to prove his incompetency violates his due process rights guaranteed under the United States Constitution. Accordingly, we express no opinion whether Jones' rights were violated under the United States Constitution. Even though the federal question may ultimately be resolved against the accused, it nonetheless remains the prerogative of this court to afford a greater measure of protection to a defendant under our state constitution than is provided by the United States Supreme Court under the federal constitution. *Daugaard v. Baltic Co-op. Bldg. Supply Ass'n.*, 349 N.W.2d 419 (S.D.1984); *State v. Opperman*, 89 S.D. 25, 247 N.W.2d 673 (1976). Our analysis will therefore advance to the restricted question whether SDCL 23A–10A–6.1 violates an accused's due process rights guaranteed by the South Dakota Constitution.

It is the settled criminal law in this state that "the burden of proof rests upon the prosecution at every stage of the trial." *State v. Wilcox*, 48 S.D. 289, 297, 204 N.W. 369, 372 (1925). *See also State v. Devine*, 372 N.W.2d 132 (S.D.1985); *State v. Waugh*, 80 S.D. 503, 127 N.W.2d 429 (1964); *State v. Staley*, 56 S.D. 495, 229

N.W. 373 (1930). Since the competency of the accused to stand trial controls whether there is even going to be a trial, it necessarily follows that a competency hearing is a basic stage of the proceeding. Accordingly, the burden of proof allocation imposed by SDCL 23A–10A–6.1 when the accused's attorney motions for an incompetency hearing is incompatible with this settled South Dakota rule.

■ Admittedly, in none of these cases did we conclude that an attempt to shift the burden of proof to the accused at any stage of the trial reached constitutional dimensions. The opinions do, however, demonstrate this court's historically jealous protection of an accused's burden of proof rights. In our opinion, and as noted in *Hollis, supra,* there is a great justification for that protection. When the competency of the accused is put in question he may or may not have the mentality to fairly defend himself. If in fact the defendant is less than competent, however, a handicap exists which renders a fair trial impossible. An incompetent person cannot be fairly tried even with the prosecution carrying the burden of proof on all issues during every stage of the trial. Much less is such a person able to fairly assume the burden of proof on any issue, whether the standard be a preponderance of the evidence or beyond a reasonable doubt. Accordingly, our system of law must shroud such an accused with whatever mantle of protection is necessary to insure his due process rights are fully protected. We are therefore compelled to hold that SDCL 23A–10A–6.1 violates the due process guarantees of article VI, § 2 of our state constitution to the extent that it permits the burden of proving incompetency to be imposed upon the accused.

■ It follows from the above that the State must bear the burden of proving incompetency whether the need for an incompetency hearing is asserted by the defendant, the state, or the trial court. *See* SDCL 23A–10A–3. This is not to say that in all cases the State must introduce evidence bearing on the defendant's competency to proceed. The State is only required to prove triability at a competency hearing, the procedure of which is governed by SDCL ch. 23A–10A. Under SDCL 23A–10A–3, such a hearing is not required unless "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceeding against him or to assist properly in his defense." [3]

Although the burden of proving competency must rest on the State, due process does not necessarily require that the State bear the beyond a reasonable doubt standard. The reasonable doubt standard is mandated only as to elements of the offense charged. Competency to stand trial, while certainly a stage of the prosecution, is not an element of any offense. The preponderance standard is therefore permissible. *Brown, DiGilio, Heger, supra.*

Although Jones was denied a right guaranteed by our state constitution, it does not necessarily follow that this deprivation requires the reversal of his conviction. The denial of a constitutional right can constitute harmless error. *State v. Heumiller,* 317 N.W.2d 126 (S.D.1982). We must now determine whether the unconstitutional application of the statute was prejudicial or merely harmless error.

■ Two psychiatrists and one psychologist interviewed Jones prior to the competency hearing. All of these doctors found he suffered serious mental disfunction, and one opined that Jones was not capable of effectively assisting in his defense. In short, from the whole record we cannot conclude that the unconstitutional burden of proof allocation applied in Jones' competency hearing was harmless error.

■ In view of our above conclusions, we need not discuss the sufficiency of the evidence issue urged by Jones. However, since the case will be remanded for a new trial, we should consider Jones' final argument in which he contends he was improp-

---

**3.** For interpretation of a prior analogous statute see *State v. Vassar,* 279 N.W.2d 678 (S.D. 1979), *overruled on other grounds, State v. Waff,* 373 N.W.2d 18 (S.D.1985), and *Magenton v. State,* 76 S.D. 512, 81 N.W.2d 894 (1957).

erly convicted and sentenced on the charges of aggravated assault with a deadly weapon in violation of SDCL 22–18–1.-1(5) (Count III), and commission of a felony while armed with other than a machine gun or short shotgun in violation of SDCL 22–14–13 (Count IV).[4] Both convictions stem from the single act of pointing the gun at the policeman. SDCL 22–14–14 states in part: "No offense may be charged under those sections [which include SDCL 22–14–13] when the use of a dangerous weapon is a necessary element of the principal felony alleged to have been committed or attempted." Although SDCL 22–18–1.1(5) uses the terms "deadly weapon," this court has recently held this wording to be synonymous with the terms "dangerous weapon" as used in SDCL 22–14–14. *State v. Collier*, 381 N.W.2d 269 (S.D.1986). Thus, because of the charge in Count III, Jones should not have been charged with Count IV. The state acknowledges this conclusion in its brief.

Reversed and remanded for a new trial not inconsistent with our holdings herein.

MORGAN, HENDERSON, and SABERS, JJ., concur.

WUEST, C.J., dissents.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

WUEST, Chief Justice (dissenting).

I dissent. Although it may have been done in the past, it is a serious error to *sua sponte* decide a constitutional issue of this importance. Upon their own initiative the majority is declaring a statute unconstitutional without giving the parties an opportunity to brief or argue the issue. The State, i.e., the people, have a right to be heard when there is a question on whether a statute is unconstitutional. *Sua sponte* consideration of constitutional issues should be reserved for exceptional cases, and only invoked when the unconstitutionality is absolutely clear.

The Supreme Courts of New Mexico, Georgia, and Iowa have upheld a statute similar to SDCL 23A–10A–6.1 from due process attacks. *See, Wallace v. State*, 248 Ga. 255, 282 S.E.2d 325, 330 (1981); *State v. Pedersen*, 309 N.W.2d 490 (Iowa 1981); *State v. Boland*, 309 N.W.2d 438 (Iowa 1981); *State v. Aumann*, 265 N.W.2d 316 (Iowa 1978); *State v. Chapman*, 721 P.2d 392 (N.M.1986). The Ohio Court of appeals has done so as well. *State v. Pruitt*, 18 Ohio App.3d 50, 480 N.E.2d 499 (1984).

Of the State opinions cited by the majority, only one, *People v. McCullum*, 66 Ill.2d 306, 5 Ill.Dec. 836, 362 N.E.2d 307 (1977) holds a statute placing the burden or proof on a defendant in a competency hearing is a violation of due process. The other State cases cited by the majority merely adopt the rule in the absence of a statute and place the burden of proof on the State. Contra, the Pennsylvania Supreme Court has ruled the defendant has the burden of proof. *See Com. v. Martinez*, 498 Pa. 387, 446 A.2d 899 (Pa.1982).

In *Martin v. Ohio*, —— U.S. ——, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), upholding an Ohio statute placing the burden of proof on a defendant claiming self defense, the United States Supreme Court noted the common-law rule provided the defendant had the burden of proof of affirmative defenses, and that was the rule when the due process clause was adopted.

Although several Federal Circuit Courts of Appeal have held placing the burden of proof on the defendant violates due process, no case has been cited from the Eighth Circuit, and *Leland* and *Martin* indicate the United States Supreme Court is leaning toward a holding of nonviolation of due process.

Since there is a significant conflict of authority whether SDCL 23A–10A–6.1 violates due process, we should decide the due process issue when it is raised, briefed and argued. It is unfair to the State i.e., the people, to do otherwise.

---

4. SDCL 22–14–13 was repealed by S.D.Sess.Laws ch. 192 § 49 (1985).