Merrimack
No. 82-114

THE STATE OF NEW HAMPSHIRE

v.

EDWARD P. STILES

August 31, 1983

*Gregory H. Smith,* attorney general (*Peter W. Mosseau,* assistant attorney general, on the brief, and *Michael A. Pignatelli,* assistant attorney general, orally), for the State.

*Joanne S. Green,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

KING, C.J.  The defendant, Edward P. Stiles, appeals his convictions of two counts of theft by unauthorized taking and one count of attempted theft. *See* RSA 637:3; RSA 629:1.

The charges against the defendant stemmed from events occurring on January 5, 6, and 7, 1981. The evidence introduced at trial tended to establish the following.

On January 5, 1981, the defendant, a cab driver, presented a teller at the Concord Savings Bank with a certificate of deposit passbook

which belonged to Frances George. The defendant stated he wished to withdraw money from "his mother's" account. The teller informed the defendant that "his mother" should complete a withdrawal slip, or accompany him to the bank. Later that day, the defendant returned with Mrs. George, an eighty-one-year-old widow. The defendant told the teller that Mrs. George needed $500 in cash in order to pay a bill. The teller gave the defendant $500. At trial, the teller testified that Mrs. George appeared to be confused and said very little during this transaction.

The following day, the defendant and Mrs. George went to a different branch of the Concord Savings Bank. The defendant indicated that Mrs. George wished to withdraw $2,500 so that she could move "some place where it was warmer." The teller gave the defendant $2,500 in cash. The teller at this branch testified that Mrs. George appeared to be confused.

Finally, on January 7, 1981, the defendant and Mrs. George went to a third branch of the Concord Savings Bank. The defendant stated that Mrs. George wished to withdraw $3,000 in cash "to put it in an Arizona bank." A bank vice-president, concerned about the series of large cash withdrawals, took Mrs. George aside and asked her why she needed $3,000. She stated that she did not need the money. When questioned, the defendant denied any knowledge of the whereabouts of the cash previously withdrawn. The bank vice-president refused to give the defendant the $3,000 requested and demanded the return of the cash previously withdrawn. The defendant later returned with $1,880 which he said he found under the front seat of his cab.

The defendant was charged with two counts of theft by unauthorized taking and with attempted theft. Prior to trial, counsel for the defendant filed a motion to dismiss the indictment for theft by unauthorized taking dealing with the defendant's conduct on January 6, 1981, on the ground that it was insufficient. The Superior Court (*Dunfey*, C.J.) denied this motion. Counsel for the defendant also filed a motion to dismiss all three counts, contending that the defendant was incompetent to stand trial. After a hearing on this motion, the Superior Court (*Temple*, J.) also denied this motion.

During a trial in Superior Court (*DiClerico*, J.), Mrs. George's conservator, Attorney Michael Ruedig, testified over the defendant's objection that he had not given the defendant authority to withdraw money from Mrs. George's account. He also identified Mrs. George, who was present in the courtroom. The defendant objected to Mrs. George's presence at the trial and the identification of her, because she had been found by the court to be incompetent to testify. A jury returned a verdict of guilty on all three counts, and the defendant

appealed. He raises four issues on appeal. We affirm in part, reverse in part, and remand.

■■■ The defendant contends that the indictment for theft by unauthorized taking dealing with the defendant's conduct on January 6, 1981, is constitutionally insufficient because it does not contain enough facts to warn the defendant of the specific charges against him. The indictment at issue provided that:

> "Edward Stiles . . . on the sixth day of January [1981] at Concord in the County of Merrimack, with force and arms, did purposely exercise unauthorized control over $2,500.00 in United States currency, the property of Frances George with a purpose to deprive her thereof without authority of said Frances George to do so. . . ."

An indictment is constitutionally sufficient if it gives the defendant enough information about the nature and cause of the accusation to allow the defendant to prepare for trial. *State v. Shute*, 122 N.H. 498, 504, 446 A.2d 1162, 1165–66 (1982). The indictment must include all of the elements which constitute the offense charged. *Id.*, 446 A.2d at 1166. The indictment at issue specified all of the statutory elements of theft by unauthorized taking. The indictment did not describe the location or the means used by the defendant to gain unauthorized control over Mrs. George's property; therefore, the factual information contained in the indictment, including the date and place of the offense, the name of the victim, and the amount and type of property involved, was constitutionally insufficient to inform the defendant of the factual basis of the charge. *State v. Shute, id.*, 446 A.2d at 1166; *State v. Bussiere*, 118 N.H. 659, 661, 392 A.2d 151, 153 (1978). The motion to dismiss this indictment should have been granted.

The defendant's second argument is that the trial court erred in permitting Mrs. George's conservator, Attorney Ruedig, to testify that he did not authorize the defendant to withdraw money from Mrs. George's account. The defendant contends that this testimony was irrelevant and immaterial because the indictment charged that the defendant exercised unauthorized control over Mrs. George's property "without authority of said *Frances George* to do so." (Emphasis added.)

■■ "Evidence is relevant if it tends in any way to establish a proposition which is of consequence in an action." *State v. Dustin*, 122 N.H. 544, 546–47, 446 A.2d 1186, 1188 (1982). In admitting this evidence, the court explained that, because the jury would be informed of the conservatorship, it was necessary to admit evidence

on whether the conservator had given authority for the money to be withdrawn. He stated that if such evidence were not admitted, the jury might infer that the conservator had authorized the funds to be withdrawn. We agree with the trial court that the conservator's testimony aided the jury in understanding the nature of the conservatorship. Such an understanding was necessary in order for the jury to determine whether Mrs. George had authorized the defendant to exercise control over her property. We therefore hold that Attorney Ruedig's testimony was relevant.

Moreover, the testimony of the conservator was also material. Evidence is material if it is offered to prove a matter in issue. *Welch v. Bergeron*, 115 N.H. 179, 182, 337 A.2d 341, 344 (1975). The matter of Mrs. George's authorization was at issue in this case.

The defendant contends that the court erred in permitting Mrs. George, whom the court had determined was incompetent to testify, to be present at the trial and to be identified to the jury by Attorney Ruedig. He claims that the identification of Mrs. George constituted the admission of inadmissible tangible evidence. We find no merit to the defendant's argument. The identity of the victim was relevant to the State's case. We do not agree that the prejudicial effect of identifying Mrs. George outweighed its probative value. Nor do we agree that the identification of Mrs. George was, as the defendant contends, the functional equivalent of displaying to the jury an apparently bloodstained bedspread which could not have been admitted into evidence, as in *State v. Scarlett*, 118 N.H. 904, 905–07, 395 A.2d 1244, 1245–46 (1968).

Finally, the defendant claims that the court used an incorrect standard in determining whether the defendant was competent to stand trial. The proper standard for determining competency was enunciated by the United States Supreme Court in *Dusky v. United States*, 362 U.S. 402 (1960). A defendant cannot be tried if he is unable to consult with his lawyer with a reasonable degree of rational understanding or if he does not have a rational as well as factual understanding of the proceeding against him. *Id.* at 402; *cf. Roy v. Perrin*, 122 N.H. 88, 94, 441 A.2d 1151, 1155 (1982).

In its order finding the defendant competent to stand trial, the court stated: "The evidence presented did not indicate that the defendant was incapable of knowing the nature and quality of his acts or incapable of distinguishing between right and wrong so as to be ineffectual in assisting counsel or otherwise incompetent to stand trial." The language of the court's order indicates that it did not focus upon the factors identified in *Dusky*. Several jurisdictions

have held that it is a violation of due process to measure competency by determining whether the defendant was capable of distinguishing between right and wrong. *Ex parte Harris*, 592 S.W.2d 624, 624 (Tex. Crim. App. 1980); *see, e.g., Thursby v. State*, 223 A.2d 61, 67–68 (Me. 1966); *State v. Cook*, 104 R.I. 442, 446–47, 244 A.2d 833, 835 (1968). We conclude that the trial court's focus on the defendant's ability to know the nature and quality of his acts and to distinguish between right and wrong constituted a denial of due process.

Because there is a record of the competency hearing held in the superior court, however, we believe that a retrospective determination of whether the defendant was competent to stand trial may be possible. We remand for consideration of whether a retrospective determination based on the application of the correct standard can be made. *See Ex parte Harris*, 592 S.W.2d at 625; *see also Ex parte Harris*, 618 S.W.2d 369, 372 (Tex. Crim. App. 1981). If such a determination is not possible, a new trial is required.

*Affirmed in part; reversed in part; remanded.*

BOIS, J., did not sit; the others concurred.